DAVIS *v.* PARKMAN, (two cases.)

(*Circuit Court, D. Massachusetts.* March 21, 1891.)

1. PATENTS FOR INVENTIONS—PATENTABILITY—ROWLOCKS.

The combination of a swinging rowlock and a pin or standard having an outward curvature, (letters patent No. 209,960, Nov. 19, 1878,) intended to increase, while still limiting, the path in which the button of the oar can travel, is not patentable, as the curvature of the pin requires only mechanical skill.

2. SAME.

The claim of a rowlock, swinging or stationary, having an inward convexity upon the upright, (letters patent No. 209,960, Nov. 19, 1878,) being simply the surface of a thole pin or upright inclined to the plane of the horizon, is not patentable; the same device having been long in use on dories and other boats.

3. SAME.

A rowlock with an inset in the sill, as described in claim 2 of letters patent No. 209,960, Nov. 19, 1878, so as to permit the oar to approach more nearly to a vertical position by removing further from each other the vertical planes of the outer side of the sill and the inner side of the offset arm, is not patentable.

4. SAME—OUTRIGGER.

Claim 4 of letters patent No. 209,960, Nov. 19, 1878, for an outrigger consisting of double braces united at their outer ends, one of them being attached at its inner end to the center of the boat, and perpendicularly, or nearly so, to the side of the boat, whereby the latter can be grasped at its center for transportation, is not patentable, since no inventive skill is required to so change the position of the braces.

5. SAME—FOOT-BOARD.

A foot-board for a row-boat having the point turned up at an angle with the body of the board (letters patent No. 231,017, Aug. 10, 1880) is a patentable invention, though the purpose was formerly accomplished by stuffing rags under the toe of the rower.

6. SAME—PATENTABILITY.

The claim of letters patent No. 231,016, Aug. 10, 1880, for "an oar, the portion, D, of which that fits in the rowlock is in transverse section of a general pentagonal form, as described, whereby the oar may be rocked in the rowlock without lost motion between the oar and the rowlock," is not patentable.

In Equity.

*Joshua H. Millett*, for complainant.

*George W. Estabrook*, for respondent.

CARPENTER, J. These are bills in equity brought by Michael F. Davis against Henry Parkman to enjoin alleged infringements of letters patent No. 209,960, dated November 19, 1878, by using rowlocks and out-riggers like those claimed in the patent; of letters patent No. 231,017, dated August 10, 1880, by using foot-boards like those claimed; and of letters patent No. 231,016, dated August 10, 1880, by using oars like those claimed. The claims which are alleged to be infringed by the respondent's rowlock are as follows:

"(1) The combination of the swinging rowlock and the pin or standard, A, having the outward curvature, as therein described.

"(2) A rowlock, swinging or stationary, having an inward convexity upon the upright, and an inset in the sill, as described."

As to the first claim, I do not find in the respondent's device the out-ward curvature described in the patent. The outward curve of the patent is evidently an outboard curve, and is intended to increase, while still limiting, the path in which the button of the oar can travel. The curved arm is still "to receive the button of the oar." It facilitates the stroke, and so does the respondent's device; but they accomplish this end by different means, since the respondent, by a curve parallel with the gun-wale of the boat, removes the upright entirely from the path of travel of the button. Still further, I see no patentable invention in the device of the complainant. If it be desirable to increase the length of the stroke, I think it involves only mechanical skill to move outward such part of the mechanism as would otherwise limit that length.

As to the second claim, I observe that the operative part of what is called in the patent "the inward convexity upon the upright" is no more than the surface of a thole-pin or upright, inclined to the plane of the horizon, and is hence anticipated by the pins long in use in dories and some other boats. These old devices permitted the oar "to slide up without friction," or, more properly, with very little friction, in the same manner as the complainant's device. As to the friction during the rotation of the oar, I can see no substantial difference between the old and the new constructions.

I consider next the inset in the sill of the rowlock. The purpose of this inset is to permit the oar to approach more nearly a vertical position by removing further from each other the vertical planes of the outer side of the sill and the inner side of the arm, called the "offset arm." To increase this distance it is admittedly an old device to move outboard the offset arm. This being the case, and the object sought being to in-crease the distance between two parts of the structure, there can be no invention in a device which contemplates moving the sill from the arm rather than the arm from the sill, unless it be that the sill is moved in-ward, with reference to some other part of the structure. In this case, the only way in which there can be said to be a movement of the sill from the arm, as distinguished from a movement of the arm from the sill, is by referring the inset of the sill to the plane of the outboard side of the uprights. And the patent shows that the inner side of the sill is to be inboard from that surface. The claim can, I think, have no mean-

ing unless it be so read, and, being so read, it is clearly anticipated by the rowlock spoken of in the testimony of George Faulkner, and forming part of the "Defendant's Exhibit Kennedy Outrigger." In that rowlock there is the same distance between the vertical plane of the uprights and the outside of the sill.

The claim which is alleged to be infringed by the respondent's outrigger is as follows:

"(4) The outrigger herein described, consisting of the double braces, D, E, and brace, F, united at their outer ends, the said brace, F, being attached at its inner end to the center of the boat, and perpendicularly, or nearly so, to the side of the boat, whereby the latter can be grasped at its center for transportation, substantially as set forth."

So far as the claim covers the particular number of braces constituting the outrigger, I see no patentable invention. Outriggers have long been made, as the testimony clearly shows, with varying numbers of braces, according to the supposed advantages in strength and lightness. Nor can there be invention in attaching one brace to the center of the boat. So far as carrying the boat is concerned, that could be easier done if there were no outriggers, and there can be no invention in so placing these as least to interfere with the person who has to carry the boat. Doubtless, however, the intent of the patentee is to claim the outrigger having a brace placed perpendicularly to the side, whereby, although the outrigger be near the center, a person may still approach very near to that center, so as to grasp and carry the boat. In such a construction there is, in my judgment, no patentable invention. To change the direction and point of attachment of the braces so as to avoid the point opposite the center of gravity of the boat would be within the skill of any mechanic when once the necessity for such a device was seen. Such modifications of structure to meet the varying requirements of the case abundantly appear in the evidence, even if it be admitted, as the complainant claims, that there is no certain evidence of the previous use of an outrigger with the braces substantially at right angles with the boat.

The complainant in his testimony and argument lays much stress on certain supposed advantages as to supporting weight and resisting strains, which arise from the peculiar manner in which the braces are connected and attached. As to this point, it is enough to say that the patent does not describe or claim those peculiarities of structure, nor the advantages supposed to arise therefrom.

The claim which is alleged to be infringed by the respondent's footboard is as follows:

"(2) The combination, with a row-boat, of a foot-rest composed of the footboard, A, having the point, *b*, turned up at an angle with the body of the board of about forty-five degrees, and provided with the heel-piece, C, and straps or pieces, *d, d'*, arranged to lace over the foot just across the bend of the foot, between the instep and the toes, substantially as described."

There is on the evidence, I think, no substantial contention that all the elements of this combination are old except the point turned up at an angle with the main body of the foot-rest. As to this, I am not sat-

isfied that it was in use before. it was made by the complainant. The evidence of those who describe similar structures in the years from 1874 to 1878 is too indefinite to overcome the presumption arising from the grant in the patent, and from the undisputed fact that the complainant's device has been exclusively used for the purpose since it was produced. The use of a stuffing or packing of rags under the toe of the rower does not, in my opinion, amount to an anticipation. Such a packing would only very imperfectly perform the function of the firm, unyielding surface of the shoe as described by the complainant, and, in fact, I do not think there is sufficient evidence to warrant the conclusion that it performed any function except to prevent injury to the hands of the rower.

There will, therefore, in the first case be a decree that the respondent infringes the claim for the foot-rest, and that he does not infringe the other claims.

---

The claim which is alleged to be infringed by the respondent's oar is as follows:

"(4) An oar, the portion, D, of which, that fits in the rowlock, is in transverse section of a general pentagonal form, as described, whereby the oar may be rocked in the rowlock without lost motion between the oar and the rowlock, substantially as described."

Turning now to the description to which the claim refers, it appears that the only information there contained is the statement, by implication, that the loom of the oar is of such section that it can rotate in the rowlock, and the statement that one diameter of that section is equal to the width of the space between the uprights of the rowlock, and that the diameter at right angles to that last named is about equal to the space between the base and cross-bar of the lock. The application for this patent was filed March 18, 1880. It appears that oars had long been in use having the loom other than a circle in cross-section. It is also in evidence, and is not disputed, that the complainant in the year 1876 gave to Joseph S. Johnson, a maker of oars, a model of the loom of an oar adapted, as he said, to be used in the rowlock invented by him, and authorized Johnson to make and sell oars made after that model, and that he made and sold many such oars in the years 1876 and 1877. This model is produced as an exhibit in this case. So far as I can see by examination, without the use of instruments, this model is identical with the drawing of the patent, and, if this be so, it follows that the invention was in public use more than two years before the application, and hence the patent cannot be sustained. To this view, however, the complainant objects that the oars made by Johnson were not made according to the pattern, and, as evidence thereof, refers to the fact that some of them required to be altered before they could be conveniently used. I am satisfied, however, that the changes which were made were only such fitting as would be expected to be necessary in order to suit a particular rowlock, or the convenience of the individual oarsman. The complainant still further objects that, even if made ac-

cording to the model, an oar would not serve the purpose of the patented oar, because it could not be rotated in the rowlock. In order to demonstrate this, he has prepared a model representing a rowlock, but with a rectangular opening for the reception of the oar, and so arranged that the side representing one of the pins can be adjusted and clamped at any desired distance from that representing the other pin. He then places the model in this diagramatic rowlock, so that the "feathering diameter," as it is called, or that diameter which is horizontal when the oar is feathered, lies parallel with the sill of the rowlock, and clamps the side representing the pin at such a point that the two pins exactly touch the sides of the oar model. In this position it appears that the oar model cannot be rotated, by reason of the fact that one diameter is greater than the feathering diameter; whereas, as the complainant contends, in the patented oar the feathering diameter is greater than any other diameter of the section of the oar. As to this argument I observe in the first place that the loom of the oar in actual use with its leather covering is much more elastic than the wooden model, and that the fit of an oar in a rowlock is by no means so exact as the fit of this model oar in the model rowlock. It would therefore be dangerous to draw inferences as to the operation of oars in rowlocks from the operation of these models. But, still further, if the essence of the invention consists in the proportions of the diameters, it is obvious that the patent cannot be sustained, because it nowhere states those proportions. It describes the loom of the oar as being "of a general pentagonal form, as described." The only reference to the length of diameters is that above quoted, and this statement refers only to two diameters, and does not give the relative length of these, either expressly or by implication. It is indeed inferable from the patent that the oar is to be so constructed as to rotate in the rowlock. But to direct that an oar shall be so made as to fit in all particulars the rowlock in which it is to be used, without describing by what means this is to be accomplished, certainly does not require the exercise of the inventive faculty.

In the second case, therefore, the bill will be dismissed, with costs.